UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROBERTO BARBOSA ORTIZ,**

      **Petitioner,**

**v.**                                        **Case No. 8:13-cv-1636-T-27AEP**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## ORDER

Petitioner Roberto Barbosa Ortiz, a state of Florida inmate proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). He challenges his convictions entered in 2002 by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida. Respondent filed a response (Dkt. 9), which concedes the petition's timeliness. Petitioner filed a reply (Dkt. 22). Upon review, the petition must be denied.

## PROCEDURAL HISTORY

Petitioner was convicted of armed trafficking in a controlled substance (14 to 28 grams), conspiracy to traffic in heroin, and trafficking in illegal drugs (28 grams to 30 kilograms). (Dkt. 11, Exhibit 1, Information; Dkt. 11, Ex. 4, Vol. II, p. 458.) He was sentenced to life imprisonment on the armed trafficking count and concurrent terms of thirty years in prison on the remaining counts. (Dkt. 11, Ex. 1, Judgment and Sentence.) The state appellate court *per curiam* affirmed the judgments and sentences. (Dkt. 11, Ex. 3.) Petitioner filed a motion and an amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 11, Ex. 5.) The state court summarily denied some of Petitioner's claims, and held an evidentiary hearing on the

remaining claims.  (Dkt. 11, Exs. 6, 7.)  Following the hearing, the state court entered a final order

denying Petitioner's motions for postconviction relief.   (Dkt. 11, Ex. 9.)  The state appellate court

*per curiam* affirmed the denial.  (Dkt. 11, Ex. 10.)  Petitioner also filed a motion to correct illegal

sentence under Florida Rule of Criminal Procedure 3.800(a), which the state court denied.  (Dkt. 1-

3.)  The state appellate court *per curiam* affirmed the order of denial.  (Dkt. 1-4.)

## FACTS[1]

A confidential informant ("CI") arranged for a purchase of one ounce of heroin from Orlando

Adams.  The CI initially purchased a sample of the heroin from Adams near a convenience store in

Tampa shortly after 9:00 p.m. on October 23, 2001.  Adams arrived at this location as a passenger

in a white Dodge Stratus.  After police determined that substance to be heroin, the CI called Adams

about purchasing the larger amount of heroin.  In several phone calls between the CI and Adams,

Adams discussed talking to "the guy."[2]  During one call, Adams told the CI, "I called the guy.  The

guy isn't there.  Give me one hour more," and, "He said he need a little bit more time.  A little bit

more time and he'll be done."  The CI understood this delay to mean that Adams needed to obtain

the heroin from his supplier.

After Adams sold the sample to the CI, the white Stratus was observed going to the Carlyle

Apartments in Tampa.  At approximately 10:00 p.m., the car was observed leaving the apartments.

It traveled to an address on North Thatcher, where its occupants appeared to make contact with an

individual.  The car left North Thatcher after about three minutes.  Around midnight, the white

Stratus traveled to a residence on North 13th Street in Tampa, where Adams got out of the car and

walked into the home.  Approximately four or five minutes later, he and two other men exited the

house and left in the car.

---

[1] This factual summary is derived from the trial transcript and the direct appeal briefs.

[2] Numerous phone calls between the CI and Adams were recorded and were played at trial.

During one of the phone calls made that night, Adams told the CI to meet at Adams' former residence. The CI, monitored by police, called off the meeting because this location was considered unsafe. When the Stratus returned to the house on North 13th Street, police arrested the car's occupants. Adams was driving; Maria Morales was in the front passenger seat; Jorge Mictil was in the rear passenger side seat; and Petitioner was in the rear driver side seat.

Two bags of heroin were found on the rear driver side floorboard. A loaded gun was found on Petitioner's person. Petitioner also had a key to the North 13th Street house. Police obtained a search warrant and searched the house. Inside, they found items in the kitchen including cutting agents, plastic bags, a sifter, and a scale. They also located heroin inside an electric panel near the kitchen. In a bedroom determined to be occupied by Mictil, police found more heroin. Paperwork and documentation belonging to Petitioner was found in the other bedroom. Petitioner admitted to Detective Jose Feliciano that he lived in the house.

At trial, Petitioner called Mictil,[3] who testified that something plastic was thrown from the front to the back of the car when the police arrested the car's occupants. Mictil testified that Petitioner did not bring drugs into the car and did not talk to Mictil about drugs.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d),

---

[3] The record reflects that Mictil had already entered a plea of guilty in connection with these events. (Dkt. 11, Ex. 4, Vol. III, pp. 313-15.)

which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide." *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).

In *per curiam* decisions without written opinions, the state appellate court affirmed the judgments and sentences, and affirmed the rejection of Petitioner's motion for postconviction relief and motion to correct illegal sentence. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003).

The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. Petitioner bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### Grounds Two and Three: Trial Court Error

**Ground Two**: "TRIAL COURT VIOLATED PETITIONER'S RIGHT TO DUE PROCESS OF LAW UNDER THE U.S. CONSTITUTION'S 14TH AMENDMENT, BY DENYING A MOTION FOR JUDGMENT OF ACQUITTAL WHERE THE EVIDENCE WAS CIRCUMSTANTIAL AND NOT INCONSISTENT WITH AN [sic] HYPOTHESIS OF INNOCENCE."

Petitioner asserts that the trial court erred in denying his motion for judgment of acquittal on all counts, thereby violating his due process rights under the Fourteenth Amendment. However, Petitioner did not raise the federal nature of this claim on direct appeal. He presented this claim only in terms of Florida law. (Dkt. 11, Ex. 2, Initial Brief of Appellant, pp. 19-22.) Moreover, Petitioner brought this claim under Florida's standard for circumstantial evidence cases. (Id., pp. 21-22.) This is a higher standard of proof than the federal sufficiency of the evidence standard applied in *Jackson*

*v. Virginia*, 443 U.S. 307 (1979).  *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 451 (11th Cir. 2015) (Florida uses a "heightened burden of proof in cases involving circumstantial evidence.").

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999).  *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 167-70 (1982).  A fundamental

miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.

Bringing his claim under Florida's circumstantial evidence standard and failing to cite federal authority or raise a federal question was insufficient to raise and thereby exhaust Petitioner's federal due process claim in state court. *See Preston*, 785 F.3d at 462 (Preston did not exhaust a federal claim because he "relied on a unique rule of state law, 'cited exclusively to state cases, and all of his substantive arguments addressed Florida law.'") (citation omitted). Petitioner cannot return to state court to file a successive and untimely direct appeal. *See* Fla. R. App. P. 9.140. Therefore, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner does not establish that an exception applies to overcome the default. *See id.* Accordingly, Ground Two is barred from federal habeas review.

**Ground Three**: "TRIAL COURT VIOLATED PETITIONER'S RIGHT TO COUNSEL AND/OR TO REPRESENT HIMSELF AND TO DUE PROCESS OF LAW, UNDER THE U.S. CONNSTITUTION'S [sic] 6TH AND 14TH AMENDMENTS, WHEN IT REFUSED TO GRANT A CONTINUANCE TO ALLOW PETITIONER TO SECURE NEW COUNSEL OR ALTERNATIVELY TO HOLD A *NELSON* HEARING TO DETERMINE IF HE COULD EFFECTIVELY REPRESENT HIMSELF."

Petitioner argues that the trial court violated his federal due process rights and his right to an attorney when it rejected his request for a continuance to hire new counsel after he expressed dissatisfaction with his trial attorney. Petitioner is not entitled to relief on this claim. First, to the extent he alleges the court should have conducted a *Nelson* hearing to determine whether there were grounds to dismiss counsel, his claim involves a question of state law. Specifically, *Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973), sets forth procedures for Florida courts to follow when a defendant asks that his counsel be discharged due to incompetence. A claim alleging a state law

violation is not cognizable in a federal habeas proceeding.  *Branan v. Booth*, 861 F.2d 1507, 1508

(11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas

relief."); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions.").

     To the extent Petitioner's claim alleges a cognizable federal constitutional violation, he does

not show entitlement to relief.  The record reflects the following exchange at the start of trial:

> [COUNSEL]: Judge, my client wishes to address the Court in regards to representation through the services of the interpreter.
>
> THE COURT: Yes, sir, Mr. Ortiz, you wanted to talk to me about something?  First of all, let me interrupt you for a second and I want to remind you that you have a right to remain silent and it's one of the greatest rights that we have in this country.  You also have a right to speak. I would caution you that everything you say is being taken down by the court reporter and can be used against you.  So you don't want to say anything about the facts of the case, okay?
>     What would you like to discuss with me?
>
> THE DEFENDANT: I just want to say that I am not happy with [counsel's] job.  I want to get another attorney to deal with this, because I am asking me [sic] to get me five years because I only have the fire weapon.
>
> THE COURT: Well, [counsel] is an outstanding lawyer.  He is not a magician and he can't just give you five years.  It's not his decision, it's the decision of the Office of the State Attorney to make a plea offer to you and if they are not offering you five years, [counsel] cannot make them offer you five years.
>     [Counsel] has tried cases before this Court and he is an outstanding trial lawyer and has done a good job thus far in representing you with the motions that he has filed and his appearances in Court on your behalf.
>     [Counsel] is retained by you, I believe, you hired him?
>
> THE DEFENDANT: Yeah, sure.
>
> THE COURT: Well, you can hire any lawyer you want to in the Yellow Pages.  The situation here, now, is though, that we have already picked a jury and we are in the middle of this trial, so we are going to proceed.
>
> THE DEFENDANT: But I'm not ready to deal with this trial like this, you understand - -

THE COURT: Well I asked if everybody was ready for trial and you indicated you were, so we are going to trial today.

If you want to fire [counsel], you certainly have that right to do so, but then you're stuck in a situation where you are not going to be able to hire a lawyer between now and the next five minutes, when we start this trial.

We have already gone through the jury selection and picked a jury, so we are going to proceed.

THE DEFENDANT: It's that I need to get more persons. I don't feel confident. It's my - - it's my life that's here. I have my four children and they depend on me. I have to find some way to feel confident, so that I can get out of this.

THE COURT: Well, Mr. Ortiz, the problem is, is that we're ready for trial and there is a jury outside, so we're going to trial this morning. [Counsel] is - - he is your hired attorney. He is the man you hired. You can fire him if you'd like, but then you will be representing yourself. Unless you can get a lawyer here to be ready for trial in the next five minutes.

THE DEFENDANT: Give me a couple of hours so that I can set up  - -

THE COURT: I can't give you a couple of hours. We are ready to start the trial. Thank you.

THE DEFENDANT: Okay. Thank you.

(Dkt. 11, Ex. 4, Vol. IV, pp. 21-24.)

When Petitioner raised this claim on direct appeal, the state appellate court rejected it without comment when it *per curiam* affirmed the judgments and sentences.[4] An element of the Sixth Amendment right to counsel "is the right of a defendant who does not require appointed counsel to

---

[4] In his amended motion for postconviction relief, Petitioner also asserted that the trial court erred in denying him a continuance and not conducting a *Nelson* hearing. However, unlike his argument on direct appeal, he failed to raise any federal issue in postconviction proceedings. (Dkt. 11, Ex. 5, pp. 47-54.) Therefore, to the extent Petitioner attempts to challenge the postconviction court's rejection of his claim, he did not exhaust a federal claim in his state court proceedings. He cannot return to state court to file a successive, untimely postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner does not overcome the default by establishing the applicability of an exception. *See id*. Notwithstanding the default, he fails to show that the state court's rejection of this postconviction claim (Dkt. 11, Ex. 6, pp. 85-87) was contrary to or an unreasonable application of controlling Supreme Court precedent, or was based on an unreasonable determination of the facts.

choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). However, the Sixth Amendment's aim "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988).

Moreover, the denial of a continuance does not always violate a defendant's constitutional rights.  "Trial judges necessarily require a great deal of latitude in scheduling trials. . . . Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).  *Ungar* further provides, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."  376 U.S. at 589.  Additionally, "[a] defendant cannot use the right to counsel as a means to manipulate the court and cause delay." *United States v. Graham*, 643 F.3d 885, 894 (11th Cir. 2011).  "Last minute requests [to substitute counsel] are disfavored." *United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980).

The record reflects that Petitioner requested time to obtain new counsel at the start of trial, after the jury had been chosen, and after the parties indicated they were ready to proceed.  He was unhappy with retained counsel because he wanted to obtain a plea agreement for five years and wanted "to get out of this."  Petitioner's direct appeal brief  indicates that his request for "more persons" meant he wanted more witnesses to be called on his behalf.  (Dkt. 11, Ex. 2, Initial Brief of Appellant, pp. 22-25.) But Petitioner did not identify any witnesses or otherwise clarify this point when seeking a continuance.  Under these circumstances, Petitioner does not demonstrate that the

trial court's refusal to grant a continuance to obtain new counsel was "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Slappy*, 461 U.S. at 12. He does not show that the state appellate court's rejection of his claim was contrary to or an unreasonable application of controlling Supreme Court precedent, or based on an unreasonable determination of the facts.

Lastly, to the extent Petitioner argues that the trial court erred by denying him the right to represent himself, he does not show entitlement to relief. This aspect of the claim is unexhausted because Petitioner did not raise it on direct appeal. (Dkt. 11, Ex. 2, Initial Brief of Appellant, pp. 22-25.) Because Petitioner cannot return to state court to file a successive direct appeal, the argument is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner does not establish the applicability of an exception to overcome the default. *See id.*

Notwithstanding the default, Petitioner's argument is without merit. Under the Sixth Amendment, a criminal defendant has the right to represent himself. *Faretta v. California*, 422 U.S. 806 (1975). Petitioner cannot show that the trial court deprived him of the right to self-representation because he failed to inform the court that he was seeking to invoke this right. During the exchange with the trial court, Petitioner only indicated that he wanted to hire another attorney to represent him. Thus, Petitioner is not entitled to any relief on this portion of his claim. *See Stano v. Dugger*, 921 F.2d 1125, 1164 (11th Cir. 1991) ( "As this court has stated, '[b]efore a court permits a defendant to represent himself ..., the defendant must clearly and unequivocally assert the right to self-representation.'") (quoting *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1064 (11th Cir. 1986)).[5] Ground Three warrants no relief.

---

[5] To the extent Petitioner may allege in his reply that the trial court violated his federal constitutional rights by failing to inform him of the right to represent himself, his argument cannot provide relief. Petitioner did not raise this claim in the federal habeas petition and is prohibited from bringing new claims in his reply. *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338 (11th Cir. 2005) )("As we have repeatedly admonished, "[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (citation omitted).

**Grounds One, Four, Five, Six, And Seven: Ineffective Assistance Of Trial Counsel**

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice.   Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.   Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.   To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).   *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").   If a claim of ineffective

assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong

need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective

assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient

showing on one.").

**Ground One**: "PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO DUE PROCESS OF LAW UNDER THE U.S. CONSTITUTION'S 6TH & 14TH AMENDMENTS WERE VIOLATED BY TRIAL COUNSEL'S FAILURE TO MOVE FOR A JUDGMENT OF ACQUITTAL BASED UPON THE INDEPENDENT FACTS SPECIFIC TO HIS CASE."

Petitioner and co-defendant Orlando Adams were tried together. Petitioner argues that

counsel was ineffective in adopting Adams' counsel's motion for judgment of acquittal on the charge

of conspiracy to traffic in heroin instead of making an independent motion specific to Petitioner,

resulting in a due process violation.

To prove that Petitioner was guilty of conspiracy to traffic in heroin, the State was required

to show that (1) Petitioner's intent was that the offense of trafficking in heroin would be committed,

and (2) in order to carry out the intent, Petitioner agreed, conspired, combined, or confederated with

Adams to cause trafficking in heroin to be committed either by them, one of them, or another person.

(Dkt. 11, Ex. 4, Vol. II, pp. 423-24.) The State was not required to show that the agreement,

conspiracy, combination or confederation to commit trafficking in heroin be expressed in any

particular words, that words passed between Petitioner or Adams, or that Petitioner did any act in

furtherance of trafficking in heroin. (Id., p. 424.)

Petitioner argues that the evidence at trial does not exclude the reasonable hypothesis of

innocence that Adams obtained the heroin either at the Carlyle Apartments or at the location on

Thatcher Street, and that the heroin was thrown in the back seat of the car when police arrived. In

support, he contends that there was no evidence he was engaged in the conversations about the purchase or that he had possession of the heroin, that the search of the house on North 13th Street did not result in any evidence to connect him to a conspiracy, and that his mere presence in the vehicle was insufficient to demonstrate he engaged in a conspiracy. Petitioner claims that counsel should have argued these facts in a motion for judgment of acquittal on conspiracy.

The state court conducted an evidentiary on this claim of ineffective assistance of counsel in the postconviction proceedings.[6]  The state court denied Petitioner's claim after the hearing.  It summarized counsel's testimony:

> At the evidentiary hearing, counsel testified that there was no basis upon which to file and argue a separate judgment of acquittal, as Defendant's issues were the same as his co-defendants, and that he presented the best argument he could for the granting of a judgment of acquittal.  Counsel testified further that, although he argued all the issues Defendant raised in his 3.850 motion – pertaining to the lack of evidence sufficient to convict Defendant – to the jury in his closing argument, such was not a valid basis for argument to the trial court in a motion for judgment of acquittal.  Specifically, counsel testified, he believed the State had made a prima facia case against Defendant, and that a motion for judgment of acquittal would not have been granted.

(Dkt. 11, Ex. 9, p. 699) (court's record citations omitted).[7]  After addressing this portion of counsel's

---

[6]In his amended postconviction motion, Petitioner claimed that counsel was ineffective in not moving for a motion for judgment of acquittal that raised facts and evidence pertaining specifically to him.  After the evidentiary hearing, postconviction counsel specifically argued in written closing arguments that counsel should have argued that the State failed to rebut Petitioner's reasonable hypothesis of innocence.  (Dkt. 11, Ex. 8.)

[7] With respect to his belief that the State had proved a prima facie case against Petitioner, counsel testified that Petitioner was inside the car "where at least there was a constructive possession of heroin" and that:

> There were also a couple hours of recordings that were entered into evidence at the trial, where another co-defendant was talking to a confidential informant, regarding setting up a drug deal, which I believe, fit the elements of the conspiracy, which meets the agreement, tied with the overt act.  I explained to Mr. Barbosa-Ortiz that I believed the overt act was him being present, inside of the motor vehicle, with law enforcement officers, while heroin was also present.

(Dkt. 11, Ex. 7, p. 743.)  Counsel again testified that "based upon those tapes, there was far more than a prima facie case evidence that showed that he was part of some agreement and certainly, there was a lot of evidence that he was part of an overt act."  (Id., p. 746.)

testimony, the state court found:

> The Court finds this testimony to be credible, and, after reviewing counsel's closing argument at trial, finds that counsel addressed before the jury the arguments to which Defendant refers in his motion, and that this failure to argue the same to the judge in an independent motion for judgment of acquittal does not render his performance deficient.

(Id., p. 703) (court's record citation omitted).

The state court further cited counsel's evidentiary hearing testimony that he believed he did not have a good faith basis to make claims in a motion for judgment of acquittal, particularly a mere presence argument, that were more properly presented in closing argument.  The state court noted that counsel testified, "I did not feel from a strategy standpoint, that it was appropriate to make that distinction, only because, in good faith, it wasn't a proper argument based upon the evidence that was presented, from a prima facie standpoint."  (Dkt. 11, Ex. 9, pp. 703-04)  As the state court addressed, however, counsel then testified:

> [W]hen you're arguing a specific judgment of acquittal, it's not necessarily a persuasion argument, or at least in my opinion; it is saying to the Court, in a good faith basis, there isn't even a prima facie basis that this stuff exists.  And I think that I had that in regards to the conspiracy.  I genuinely believe that in a good faith basis, the evidence that was presented could lead a jury or could lead even the Court to believe that my client wasn't involved in the conspiracy.

(Dkt. 11, Ex. 9, p. 704.)[8]

The state court denied Petitioner's ineffective assistance of counsel claim:

> The Court finds that, as counsel did not believe he had a good faith basis to make the arguments Defendant raises in his motion in a motion for judgment of acquittal to the

---

[8] Based on the pagination of the state court's order and the evidentiary hearing transcript, it appears that the page of the evidentiary hearing transcript containing this quotation was omitted from the record on collateral appeal.  (Dkt. 11, Exs. 7, 9.)  A federal habeas court is limited to the record before the state court.  *Pinholster*, 563 U.S. at 180-81.  Petitioner makes no allegation that this page of the transcript contains other information determinative to the resolution of this claim.

court, he cannot be deemed deficient for failing to have done so.  The Court notes further that it does not find there to be a reasonable probability that the trial court would have granted Defendant a judgment of acquittal had counsel filed a separate motion seeking such and raising these arguments, as Defendant alleges.  For these reasons, the Court finds that Defendant warrants no relief on this allegation, and **ground fourteen of his Motions for Post-Conviction Relief must be denied**.

(Id.) (emphasis in original).

There is support in the record for the rejection of this claim.  Preliminarily, the record reflects that with respect to the conspiracy count, counsel joined Adams' lawyer's motion but also made separate argument.  After the State rested, Adams' counsel argued that the State failed to show any agreement to participate in a conspiracy.  In presenting his motion, he stated, "In regards to Count Three, I think I can also argue for [Petitioner's counsel] here.  This is the conspiracy to trafficking in heroin count." (Dkt. 11, Ex. 4, Vol. III, p. 293.)  Petitioner's counsel then stated, "for the record, I would join on that motion on behalf of Mr. Ortiz."  (Id., p. 294.)  After response by the State, Adams' counsel reiterated his argument.  (Id., pp. 301-02.)  Petitioner's counsel then argued:

> Judge, the only thing I would say in response, um, for Mr. Ortiz is that [the prosecutor] argued there is a furtherance of that conspiracy as demonstrated by Mr. Ortiz' presence in the car and I think that is overreaching the argument that the conspiracy is being extended at that point.
> The only thing that's been established at least through the State's case is that Mr. Ortiz was present inside of the vehicle.  Repeatedly when speaking with any of the State's witnesses regarding this, it is clear that there was not any sort of - - not only agreement between Mr. Ortiz and anyone else, but any acts in furtherance of that agreement in regards to selling any type of drugs.
> All the testimony that the Court's heard is between . . . the confidential informant and Mr. Adams exclusively.  And I think that it is overreaching at this point to indicate that simply because of Mr. Ortiz' presence in the vehicle, he had a hand in the conspiracy and because of that, we'd ask that the count be dismissed.

(Id., pp. 302-03.)

Therefore, the record refutes Petitioner's claim that counsel failed to make any independent argument specific to the State's evidence against him in a judgment of acquittal motion on the

conspiracy charge.[9]  Moreover, counsel did make some of the arguments Petitioner now raises, contending that there was no evidence Petitioner made any agreement and that Petitioner's mere presence in the car was insufficient to demonstrate his involvement in a conspiracy.

Although counsel's evidentiary hearing testimony did not address his independent argument on behalf of Petitioner, that does not establish that counsel provided ineffective assistance at trial.[10] Counsel's performance must be evaluated from his perspective at the time of the challenged conduct. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Additionally, the state court's conclusion that counsel's testimony was credible is presumed to be correct, and Petitioner does not overcome this presumption.  *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]."); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).").

Further, the record supports the rejection of Petitioner's claim that counsel was ineffective for not arguing additional facts in his motion for judgment of acquittal.  As the Florida Supreme

---

[9] In addition, to the extent Petitioner may argue that counsel should have argued separate motions for judgment of acquittal on the trafficking counts, such an assertion is clearly refuted by the record.  (Dkt. 11, Ex. 4, Vol. III, pp. 306-07.)  Petitioner and Adams were both charged with trafficking in illegal drugs in count four, and Petitioner was the only defendant charged with armed trafficking in a controlled substance in count one.  Counsel independently moved for judgment of acquittal on these counts.  (Id.)

[10] The trial took place in September 2002.  The evidentiary hearing was conducted nearly eight years later, in August 2010.

Court explained with respect to circumstantial evidence cases:

> "A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt." *Orme v. State*, 677 So.2d 258, 262 (Fla. 1996).
>
> "The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse." *Darling v. State*, 808 So.2d 145, 155 (Fla.) (quoting *State v. Law*, 559 So.2d 187, 188 (Fla. 1989)), *cert. denied*, 537 U.S. 848, 123 S.Ct. 190, 154 L.Ed.2d 78 (2002). In meeting its burden, the State is not required to "rebut conclusively, every possible variation of events" which could be inferred from the evidence, but must introduce competent evidence which is inconsistent with the defendant's theory of events. *Darling*, 808 So.2d at 156 (quoting *Law*, 559 So.2d at 189). Once the State meets this threshold burden, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt. *Id.*

*Johnston v. State*, 863 So.2d 271 (2003). The Florida Supreme Court further stated in *Law* that "[i]t is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state." 559 So.2d at 189.

As noted, this circumstantial evidence standard is a unique rule of Florida law. *Preston*, 785 F.3d at 462. Because Petitioner's ineffective assistance of counsel claim rests on an application of this Florida standard, deference must be accorded to the state court's determination that counsel was not ineffective.[11] *See Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

---

[11] Petitioner exhausted this aspect of the claim, alleging in his postconviction appeal that counsel was ineffective for not arguing that the State failed to rebut his reasonable hypothesis of innocence. (Dkt. 11, Ex. 10, Appellant's Initial Brief, pp. 8-9, 13.)

Moreover, there is support in the record for the state court's determination that a motion for judgment of acquittal based on the arguments Petitioner raises would have been denied.  Considering the evidence in the light most favorable to the State, it demonstrates that (1) within the time frame that Adams told the CI he needed to contact his supplier and needed more time before providing heroin, Adams drove to Petitioner's house, went inside, and returned to his car with two other men; (2) Petitioner was a passenger in Adams' car when Adams expected to meet the CI to make the heroin sale; (3) a trafficking amount of heroin[12] was found in the car near Petitioner's seat;  and (4) heroin was found in Petitioner's house.  Accordingly, Petitioner does not demonstrate that the State failed to introduce competent evidence inconsistent with his theory of innocence on the conspiracy charge.  Accordingly, he does not show that the state court made an objectively unreasonable determination when it found that the motion for judgment of acquittal would have been denied even if counsel made the specific argument Petitioner proposes.[13]  He therefore fails to demonstrate prejudice as a result of counsel's performance.

In sum, counsel did present independent argument to the trial court with respect to the motion for judgment of acquittal on the charge of conspiracy to traffic in heroin, and Petitioner does not demonstrate that alternative argument in support of this motion would have succeeded.  Petitioner

---

[12] State's Exhibit 3 was identified by Massucci as the two items found on the floorboard of the car.  (Dkt. 11, Ex. 4, Vol. IV, pp. 95-96.)  Florida Department of Law Enforcement crime laboratory analyst Anna Deacin testified that State's Exhibit 3 contained heroin, and that one item weighed 24.1 grams and the other item weighed 1 gram.  (Dkt. 11, Ex. 4, Vol. III, p. 282.)  Possession of 4 grams of more of heroin constitutes trafficking in illegal drugs.  § 983.135(1)(c), Fla. Stat.

[13] To the extent Petitioner argues that counsel was ineffective for not alerting the state court to the correct standard of review applicable to the motion for judgment of acquittal, he is entitled to no relief.  Petitioner raised this argument in his written closing argument following the postconviction evidentiary hearing. (Dkt. 11, Ex. 8, pp. 642-43.)  Because his argument involves the application of underlying state law, deference must be accorded the state court's rejection of his ineffective assistance of counsel claim.  *See Will*, 278 Fed. App'x at 908.  Moreover, as addressed, the record supports the state court's conclusion that Petitioner suffered no prejudice as a result of counsel not raising the specific facts presented by Petitioner in support of the motion.

has not shown that the state court's rejection of Ground One was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground One.

**Procedural Default of Grounds Four, Five, Six, and Seven:**

The claims of ineffective assistance of trial counsel raised in claims four, five, six, and seven are procedurally defaulted. Petitioner raised these claims in his postconviction motion, but did not appeal their denial on collateral review. Florida Rule of Appellate Procedure 9.141(b)(3) governs collateral proceedings when a motion has been granted or denied after an evidentiary hearing was held on one or more claims. In *Cunningham v. State*, 131 So.3d 793 (Fla. 2d DCA 2012), addressing the application of this Rule, "Florida's Second District Court of Appeal clarified that [between December 2000 and September 2010], where the state post-conviction court had summarily denied some grounds, but denied others after an evidentiary hearing, the Second District would consider the merits, without briefing, of *all* grounds that the state post-conviction court had summarily denied." *Bucklon v. Sec'y, Dep't of Corr.*, 606 Fed. App'x 490, 492 (11th Cir. 2015) (emphasis in original).

However, the Second District Court of Appeal explained that it changed its policy such that as of October 2010 "[i]f any ground is resolved after an evidentiary hearing, we require the appellant to process the appeal under rule 9.141(b)(3)." *Cunningham*, 131 So.3d at 795. The court explained, it "no longer conducts an independent review" of summarily denied claims that were not briefed on appeal if any claim was resolved after an evidentiary hearing. *Id.* Because Petitioner's collateral appeal was initiated in 2011, the Second District Court of Appeal treated it under the procedures in *Cunningham*. Petitioner cannot return to state court to file a successive, untimely postconviction appeal. *See* Fla. R. App. P. 9.141. Therefore, Grounds Four, Five, Six, and Seven are procedurally

defaulted.  *See Smith*, 256 F.3d at 1138.  Petitioner does not establish that an exception applies to

overcome the default.  *See id.*  Notwithstanding the default, these claims are without merit.

**Ground Four**: "PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO DUE PROCESS OF LAW UNDER THE U.S. CONSTITUTION'S 6TH AND 14TH AMENDMENTS WERE VIOLATED BY TRIAL COUNSEL'S FAILURE TO SECURE FINGERPRINT ANALYSIS OF THE ALLEGED PACKAGE OF HEROIN."

Petitioner argues that counsel was ineffective in failing to obtain a fingerprint analysis of the

bag of heroin recovered from the car, resulting in a due process violation.  The state court denied this

claim of ineffective assistance of counsel after conducting an evidentiary hearing on it:

> In ground two of his Motions, Defendant alleges ineffective assistance of counsel for failure to secure expert fingerprint analysis of the seized bag of heroin. Specifically, Defendant contends that he told counsel that the bag of drugs seized from inside the car was not his, that he was unaware there were drugs in the car, and that he had never touched the bag of drugs.  Defendant contends further that counsel told him he would locate and secure an expert to conduct fingerprint analysis of the seized bag to determine who was in "possession" of it, but then failed to secure this analysis.  But for counsel's failure to secure a fingerprint analysis, Defendant contends, the outcome of his trial would have been different.
>
> At the evidentiary hearing, counsel testified that Defendant did not request a fingerprint analysis of the bag, and testified that counsel would not have requested such under the facts of Defendant's case.  Specifically, counsel testified that, because the State was not going to be presenting any fingerprint evidence, and because counsel had some knowledge from Defendant indicating that Defendant knew about the drugs and that either Defendant or Jorge Mictil had brought the bag of drugs, he did not want to risk what the results of a fingerprint analysis might be:

| | |
|---|---|
| DEFENSE COUNSEL: | There wasn't any fingerprint evidence presented against [Defendant].  If I have knowledge that he allegedly possessed those drugs and the State isn't going to present any evidence that - -any fingerprint analysis that he did do it, I think that it probably would have been more harmful, in our position, than any benefit.  I don't necessarily see any benefit to it if the State didn't say that he had been in a |

position to use that.

The Court finds this testimony to be credible, and finds counsel's decision not to obtain a fingerprint analysis to be a reasonable strategic one this Court will not second guess. *See Occhicone v. State*, 768 So.2d 1037, 1048 (Fla. 2000); *Johnson v. State*, 769 So.2d 990, 1001 (Fla. 2000). The Court notes further that, at the evidentiary hearing, Defendant failed to present any evidence of what the results of a fingerprint analysis would have been, rendering speculative his allegation and preventing him from being able to demonstrate the requisite prejudice necessary for relief on his claim. Moreover, even if a fingerprint analysis had been conducted and did not reveal Defendant's fingerprints to have been found on the bag of drugs, the Court still finds that, based on the evidence supporting that Defendant's [sic] was in constructive possession of the drugs, there is not a reasonable probability that the outcome of Defendant's trial would have been different had a fingerprint analysis been introduced. For all these reasons, the Court finds that Defendant has not demonstrated either that counsel was deficient or that he was prejudiced by any alleged deficiency. As such, Defendant warrants no relief on this allegation, and **ground two of his Motions for Post-Conviction Relief must be denied**.

(Dkt. 11, Ex. 9, pp. 687-88) (court's record citations omitted) (emphasis in original).

The record supports the state court's decision. Counsel testified at the evidentiary hearing that because he had reason to believe Petitioner had been in possession of the bag of heroin, a fingerprint analysis of the bag could have been more harmful than helpful. (Dkt. 11, Ex. 7, p. 729.) Petitioner does not overcome the presumption of correctness afforded to the state court's finding that counsel's testimony was credible. *See Baldwin*, 152 F.3d at 1316; *Devier*, 3 F.3d at 1456.

In evaluating whether a strategic decision by counsel constitutes deficient performance, the focus is on whether the decision was reasonable. *See Putman v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001) ("Moreover, '[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'") (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000)). Counsel's testimony, which the state court found credible, reflects that he chose not to seek fingerprint testing of the bag of heroin to avoid the potential development of damaging information.

Petitioner does not establish that this was not a reasonable strategic decision.  Accordingly, he fails to show deficient performance. Petitioner has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim.  He is not entitled to relief on Ground Four.

**Ground Five**: "PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO DUE PROCESS OF LAW UNDER THE U.S. CONSTITUTION'S 6TH & 14TH AMENDMENTS WERE VIOLATED BY TRIAL COUNSEL'S FAILURE TO OBJECT DURING CLOSING ARGUMENTS WHEN THE RESPONDENT INFERRED GUILT TO PETITIONER WITHOUT ANY PHYSICAL EVIDENCE TO SUPPORT SUCH AN ASSERTION."

Petitioner argues that counsel was ineffective in failing to object to improper statements during the State's closing argument, resulting in a due process violation.  Petitioner alleges that the prosecutor improperly stated that Petitioner was recorded conspiring to sell heroin; that Adams contacted Petitioner to purchase heroin; that a ledger of transactions located during the search of the home concerned heroin profits generated by Petitioner and Adams; and that Petitioner threw down the heroin found inside the car.

The state court summarily denied this claim when Petitioner raised it as ground sixteen of his postconviction motion, examining each allegation.  The court stated:

> In ground sixteen, Defendant alleges ineffective assistance of counsel for failure to object to the prosecution's prejudicial statements during closing arguments. Defendant claims he was prejudiced by counsel's failure to object during the State's closing argument, and that had counsel objected, the verdict might have been not guilty.  The Court notes that a claim that counsel should have objected to improper closing arguments is properly raised in a 3.850 motion, and notes that an evidentiary hearing may be required to address a claim regarding counsel's failure to object to improper closing arguments.  *See Rachel v. State*, 780 So.2d 192, 193 (Fla. 2d DCA 2001).  However, in arguing to a jury, a prosecutor may make any legitimate argument based on logically drawn inferences from the evidence. *Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982).  Specifically, in ground sixteen(a), Defendant claims counsel should have objected to the prosecutor's statement that Defendant was on audio tape conspiring to sell heroin.  However, the Court notes that the State referred

to the audio tape twice in its closing argument, and both times, it is clear from the context of the argument that the State was referring to Defendant Adams, not Defendant Ortiz. (*See* Transcript, September 11, 2002, pp. 375-390; 407-417; specifically pp. 376-377; 379-380, attached.) As it was clear that the State was referring to Defendant Adams and there was evidence that Defendant Adams was on audio tape due to a conversation allegedly arranging for the sale of heroin, this was not an improper argument, and counsel cannot be deemed ineffective for failing to object to improper closing argument by the State. (*See* Transcript, September 10, 2002, pp. 162-163, attached.) As such, ground sixteen (a) of Defendant's Motions is denied.

(Dkt. 11, Ex. 6, Order To Respond, In Part, Dismissing, In Part, And Denying, In Part, Motions For

Post-conviction Relief, pp. 89-90) (court's footnote omitted).

The record supports the state court's finding that the prosecutor's comments about the

audiotape concerned Adams, not Petitioner. The prosecutor first referenced the audiotape in

response to Adams' closing argument, in which he asserted that he was merely a bit player in the

events. (Dkt. 11, Ex. 4, pp. 376-77.) The prosecutor also asserted that the tapes showed the CI

contacted someone who could provide heroin, and immediately noted that the CI testified he

contacted "Orlando." (Id., p. 379.) Finally, the prosecutor urged the jury to listen to the tapes during

deliberations. But he made no indication that Petitioner was taped. (Id., p. 414.) Accordingly,

Petitioner does not establish that counsel performed deficiently in not objecting to these statements.

The state court addressed the next prosecutorial comment raised by Petitioner:

In ground sixteen (b), Defendant claims counsel should have objected to the prosecutor's statement that Mr. Adams contacted Defendant to purchase heroin. However, although this inference, that the Defendant supplied the heroin, was heavily contested at trial, there was evidence to support the State's argument that Defendant had supplied the heroin. This evidence included testimony and physical evidence that Defendant had a key in his possession which opened a house where a substantial quantity of heroin was found, that, on the audio tapes, Defendant Adams referred to another person who he needed to contact to supply the heroin, and testimony that the heroin was found in the car at the Defendant's feet. (*See* Transcript, September 10, 2002, pp. 86-90; 162-163; 166, 168-172; 225; 247-254, attached.) Although this

evidence was highly contested by the defense, the State is nonetheless able to make a legitimate argument based on logically drawn inferences from the evidence. As the Court finds the State's comment at closing was a legitimate argument based on logically drawn inferences from the evidence, counsel cannot be deemed ineffective for failing to object to improper argument by the State. Ground sixteen (b) of Defendant's Motions is denied.

(Dkt. 11, Ex. 6, Order To Respond, In Part, Dismissing, In Part, And Denying, In Part, Motions For Post-conviction Relief, pp. 90-91.)

Closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984) (citation omitted). "To warrant reversal of a verdict prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Thomas*, 8 F.3d 1552, 1561 (11th Cir. 1993) (citing *United States v. McLain*, 823 F.2d 1457, 1462 (11th Cir. 1987)). "Specifically, a prosecutor's remark during closing argument must be both improper and prejudicial to a substantial right of the defendant." *Id*. (citing *United States v. Bascaro*, 742 F.2d 1335, 1353 (11th Cir. 1984)). Furthermore, "[c]laims of prosecutorial misconduct are fact specific inquiries which must be conducted against the backdrop of the entire record." *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995).

"[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." *Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006) (citing *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987)). "Wide latitude is permitted in arguing to a jury. Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments." *Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982) (citations omitted).

Petitioner does not identify the specific comment or comments to which he believes counsel should have objected.  However, as the state court noted, the trial transcript reflects that Adams informed the CI he needed to contact another person before meeting for the previously-arranged drug sale; that heroin was found on the floorboard of the car's rear driver side, where Petitioner was sitting; and that Petitioner had a key to the house on North 13th Street where heroin was found. (Dkt. 11, Ex. 4, Vol. IV, pp. 86-87, 89-90, 93, 162-73, Vol. III, pp. 214-15, 251, 254.)  The State also presented evidence that Adams needed more time before meeting the CI, and that the white Stratus traveled Petitioner's residence.  (Dkt. 11, Ex. 4, Vol. IV, pp. 84-85, 168-69; Vol. III, pp. 225-28.) The record supports the conclusion that any statement by the prosecutor that Adams contacted Petitioner to purchase heroin was a legitimate argument based on inferences logically drawn from the evidence, and therefore was not improper.  Petitioner does not establish that counsel was ineffective in not objecting to such comments.[14]

The state court rejected Petitioner's claim with respect to the next alleged comment by the prosecutor:

> In ground sixteen (c), Defendant claims counsel should have objected to the State's comments that the ledger of money transactions related to transactions for the sale of heroin.  However, the Court finds that this was a legitimate argument based on a logically drawn inference from the evidence.  Sergeant Kenneth Morman testified as to the ledger that was recovered by the police, and as to the possibility that it was used to chronicle drug sales.  (See Transcript, September 10, 2002, pp. 261-263, attached).  As such, the prosecution's argument was a legitimate argument based on logically drawn inferences from the evidence, therefore there was no basis for counsel to object.  Ground sixteen (c) of Defendant's Motions is denied.

---

[14] Petitioner presents a vague argument that counsel should have objected to "[p]rejudicial comments allegedly originating from conversations which supposedly took place between Petitioner and codefendant Adams about selling heroin." (Dkt. 1, p. 17.)  This argument is interpreted as raising the same allegation addressed in this portion of Ground Five.  As discussed, any prosecutorial comment that Adams communicated with Petitioner about selling heroin was a reasonable inference based on the evidence adduced at trial. Petitioner fails to show any improper comment with regard to which counsel was ineffective for not objecting.

(Dkt. 11, Ex. 6, Order To Respond, In Part, Dismissing, In Part, And Denying, In Part, Motions For Post-conviction Relief, p. 91.)  Petitioner does not identify the specific prosecutorial comment to which he believes counsel should have objected.  However, as the state court noted, Sergeant Morman testified that several ledgers were found in the house.  (Dkt. 11, Ex. 4, Vol. III, p. 261.)  He testified that, based on his experience and training, he believed they were from drug sales.  (Id.) Morman testified that one ledger contained "figures that was consistent with amounts that would have been heroin there - - that were sold for a price, the amount of monies, which indicated that they were sold and the amounts that had been paid and the balance."  (Id., pp. 262-63.)

As addressed in Ground One, the State also presented evidence supporting the allegation that Petitioner and Adams conspired to traffic in heroin.  Thus, the record supports the state court's conclusion that a comment by the prosecutor indicating the ledger or ledgers related to profits from the sale of heroin was a legitimate argument based on logically drawn inferences from the evidence. Petitioner does not establish that the comment was improper, or that counsel was deficient in not objecting to it.

With respect to the last prosecutorial comment addressed by Petitioner, the state court found:

> Finally, in ground sixteen (d), Defendant claims counsel should have objected to the State's comment that Defendant had thrown down the heroin found in the car. However, it is clear from the transcript that the State was speaking hypothetically when the comment was made.  The prosecutor says, "The State submits to you this, if you use your common sense and logic, the minute the police start running up there with their guns drawn, Mr. Ortiz, boom, he just drops it down."  (*See* Transcript, September 11, 2002, p. 384, attached).  Moreover, in his second opportunity to address the jury, the prosecutor clarifies his statement, and affirms that he was speaking hypothetically.  (*See* Transcript, September 11, 2002, p. 409 lns. 13-18, attached).  As the prosecutor was speaking hypothetically and was making a legitimate argument based on a logically drawn inference from the evidence, there was no basis for counsel to object.  As such, counsel cannot be deemed deficient for failing to object, and ground sixteen (d) of Defendant's Motions is denied.

(Dkt. 11, Ex. 6, Order To Respond, In Part, Dismissing, In Part, And Denying, In Part, Motions For Post-conviction Relief, p. 91.)

The prosecutor initially made the comment in the state court's order, which he followed by saying, "It's definitely in his possession.  All he has to do is pick it up.  Either actual or constructive."  (Dkt. 11, Ex. 4, Vol. II, p. 384.)  Counsel argued in response that no testimony demonstrated that Petitioner threw the drugs on the floorboard, and that the testimony suggested otherwise. (Id., p. 398.)  In rebuttal closing argument, the prosecutor said, "Now, no, to correct that I said, all he had to do was throw down the heroin, when I was talking about commons [sic] sense and what happened." (Id., p. 409.)

The record supports the state court's conclusion that counsel was not ineffective in failing to object.  Counsel addressed the prosecutor's initial comment in his own closing argument, after which the prosecutor clarified his remarks.  Moreover, given the evidence that the heroin was found in close proximity to Petitioner in the car, Petitioner fails to show that the prosecutor's corrected comment was not a legitimate argument based on an inference logically drawn from the evidence.

In sum, Petitioner does not demonstrate deficient performance by counsel with respect to his failure to object to any of the prosecutorial comments addressed in Ground Five.  Therefore, he does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  Ground Five warrants no relief.[15]

**Ground Six**: "PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO DUE PROCESS OF LAW UNDER THE U.S. CONSTITUTION'S 6TH AND 14TH AMENDMENTS WERE VIOLATED BY TRIAL COUNSEL'S FAILURE TO MOVE FOR SEVERANCE OF THE JOINT TRIALS OF PETITIONER AND HIS CODEFENDANT."

---

[15] To the extent Petitioner may argue that counsel's failure to object constituted ineffective assistance because of the cumulative nature of the prosecutorial comments, he cannot obtain relief.  Petitioner did not present this aspect of the claim to the state court. (Dkt. 11, Ex. 5, pp. 73-74.)  It is therefore unexhausted.  As Petitioner cannot return to state court to file a successive, untimely postconviction motion, the claim is procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  Petitioner does not establish an exception to overcome the default.  *See id*.  Notwithstanding the default, Petitioner fails to show either deficient performance by counsel or resulting prejudice.

Petitioner contends that counsel stated his intent to move to sever Petitioner's trial from that of Adams because at a joint trial, the State would introduce evidence concerning Adams that would not have been admissible against Petitioner if he was tried separately. Petitioner claims that counsel was ineffective in not making this motion, resulting in a due process violation.

At the state court evidentiary hearing, counsel testified that he researched motions to sever, and concluded that because Adams and Petitioner were both charged with conspiracy, "Based upon . . . what the State is permitted to bring into evidence in an attempt to prove that conspiracy, everything that would have been associated with it would have come into the trial anyway, and I didn't think that a motion to sever would have been appropriate, or would have been granted." (Dkt. 11, Ex. 7, p. 733.) He reiterated that he did not have a good faith basis to file the motion. (Id., p. 734.) He also testified that his decision was in part a strategic one because it allowed him to move the focus to Adams, who was recorded discussing the heroin sale. Counsel testified that, "Part of our strategy in the trial was to distinguish Mr. Adams from Mr. Barbosa-Ortiz; that he wasn't involved in those conversations and that he wasn't privy to the direct knowledge of that." (Id., p. 735.) When asked if his strategy was to "focus the blame or shift any blame of culpability on Mr. Adams," counsel answered that that is what he did. (Id.) Counsel further testified that Petitioner agreed with this strategy, and that counsel never told Petitioner he would file a motion to sever. (Id., pp. 735-36.)

After the evidentiary hearing, the state court denied this ground. It addressed Petitioner's argument and counsel's testimony, and found:

> The Court finds counsel's testimony to be credible, and finds that counsel cannot be deemed deficient for failing to seek severance of Defendant's trial under these circumstances. As such Defendant warrants no relief on this allegation, and **ground eight of his Motions for Post-Conviction Relief must be denied**.

(Dkt. 11, Ex. 9, p. 14) (court's record citations omitted) (emphasis in original).

Petitioner does not overcome the presumption of correctness accorded the state court's finding that counsel's testimony was credible. *See Baldwin*, 152 F.3d at 1316; *Devier*, 3 F.3d at 1456. Nor does he demonstrate that counsel performed deficiently, considering counsel's strategic determination that even if a severance was granted, evidence concerning Adams' role would have been introduced to establish the conspiracy charge. And as counsel testified, he believed some of the evidence that directly involved Adams, such as the audio tapes of Adams' conversations with the CI, could deflect attention away from Petitioner.[16] Counsel testified that his choice not to move to sever the trials was in part strategic, and Petitioner does not show that this was an unreasonable strategic decision. Petitioner fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim. Ground Six warrants no relief.

**Ground Seven**: "PETITIONER'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO DUE PROCESS OF LAW UNDER THE U.S. CONSTITUTION'S 6TH AND 14TH AMENDMENTS WERE VIOLATED BY TRIAL COUNSEL'S FAILURE TO OBJECT TO DETECTIVE MASSUCCI TESTIFYING AS AN EXPERT WHEN HE WAS NEVER QUALIFIED AS SUCH NOR WAS THERE A STIPULATION HE WOULD BE CONSIDERED AN EXPERT."

Petitioner alleges that counsel was ineffective in not objecting to the testimony of Detective Charles Massucci, resulting in a due process violation.[17] He claims that Massucci, who was not an expert, gave expert-like testimony including assumptions, opinions, or theories that were inappropriate for lay witness testimony. At the state court evidentiary hearing, counsel explained why he did not object to Massucci's testimony:

---

[16] In his closing argument, counsel argued extensively about the lack of evidence connecting Petitioner to the drugs. (Dkt. 11, Ex. 4, Vol. II, pp. 391-406.) He also emphasized that Adams had contact with unknown persons on Thatcher Street, and that the CI knew Adams for a year but did not know Petitioner. (Id, pp. 395-97, 403-04.)

[17] In postconviction proceedings, Petitioner raised two distinct claims of ineffective assistance of counsel regarding the testimony of Massucci and Morman. (Dkt. 11, Ex. 5, pp. 60-67.) The state court treated these claims together. (Dkt. 11, Ex. 9, pp. 697-98.) In the federal habeas petition, Petitioner only challenges counsel's performance with respect to Massucci's testimony.

> I think that's important to use [objections] from a strategy standpoint, not obviously, over objecting at certain points in time. You had laid the proper foundation, I believe, for their experience, their training, their knowledge in the narcotics field. I think that if I did object necessarily to them being labeled as expert witnesses, they're going to hear me have to talk about their experience over again. They're going to hear Judge Ficarrotta make an indication to me that they have a lot of training and experience. I don't think the fact that quote, unquote they were titled experts, made any difference from the fact of the colloquy that was laid, based upon their training and experience. I don't want the jury hearing that a second time. They've already heard it once.

(Dkt. 11, Ex. 7, p. 741.) Counsel specifically addressed Massucci's testimony regarding the drug paraphernalia found during law enforcement's search. When asked whether it was "a strategy decision not to object to the way they were testifying about the paraphernalia," counsel responded, "Correct." (Id.) The state court denied this claim:

> The Court finds [counsel's] testimony to be credible, and finds counsel's decision not to raise an objection under these circumstances to be a reasonable strategic one this Court will not second-guess. The Court finds further that there is not a reasonable probability that the outcome of Defendant's trial would have been different but for this alleged deficiency. Consequently, the Court finds that Defendant is not entitled to relief on these allegations, and **ground twelve and thirteen of his Motions for Post-Conviction Relief must be denied**.

(Dkt. 11, Ex. 9, p. 18) (court's record citation omitted) (emphasis in original).

Massucci was the case agent in charge of the investigation that led to Petitioner's arrest, and testified about facts relevant to Petitioner's charges. He also provided testimony about his training and experience. (Dkt. 11, Ex. 4, Vol. IV, pp. 56-59.) Massucci testified about the items found in Petitioner's house and their typical use with respect to drug activity. (Id., pp. 104-09.)[18] Counsel's

---

[18] A lay witness may be permitted to testify about what he or she perceived in the form of inference and opinion in some circumstances. § 90.701, Fla. Stat. However, an expert witness clearly is permitted to give an opinion on any disputed issue if he or she has specialized knowledge that will assist the trier of fact in understanding or determining a fact in issue. § 90.702, Fla. Stat.

testimony reflects that he did not want to call further attention to Massucci's experience by objecting to the manner in which he testified about the paraphernalia.[19]    Although counsel's testimony indicated that, by the time of the evidentiary hearing, he may have believed that Massucci had in fact been an expert witness, Petitioner does not establish that counsel performed deficiently during the trial.  Counsel's strategy in not objecting to Massucci's testimony was reasonable.

Petitioner does not overcome the presumption of correctness afforded to the state court's conclusion that this testimony was credible.  *See Baldwin*, 152 F.3d at 1316; *Devier*, 3 F.3d at 1456. Nor does he show that the state court's conclusions that counsel made a reasonable strategic decision not to object to Massucci's testimony and that Petitioner failed to establish prejudice as a result of counsel's actions were objectively unreasonable.  Accordingly, Petitioner does not demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.  Ground Seven warrants no relief.

**Ground Eight: Fourteenth Amendment Challenge**

 "IMPOSITION OF A TERM OF LIFE IMPRISONMENT FOR A STRICT LIABILITY CRIME VIOLATES PETITIONER'S RIGHT TO DUE PROCESS OF LAW AND EQUAL PROTECTION OF THE LAW UNDER THE U.S. CONSTITUTION'S 14TH AMENDMENT."

Petitioner raises Fourteenth Amendment due process and equal protection challenges to his life sentence for armed trafficking in a controlled substance, a violation of a violation of § 893.135, Fla. Stat.  He asserts that the lack of *mens rea* makes trafficking a strict liability offense, and that his life sentence is unconstitutionally harsh for a strict liability offense.  When he raised this claim in his motion to correct illegal sentence, Petitioner relied in part on *Shelton v. Secretary, Dept. of*

---

[19] Counsel objected "as to speculation" when Massucci was asked about the significance of the scale and chemical agents.  (Dkt. 11, Ex. 4, Vol. IV, p. 104.)  His objection was overruled.  (Id.)

*Corrections*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011), which held § 893.13, Fla. Stat., as amended

by § 893.101, Fla. Stat., to be unconstitutional on its face due to the lack of a *mens rea* element.[20]

The state court rejected this argument:

> In his Motion, Defendant alleges that his life sentence in the above-styled case is too harsh of a penalty for a strict liability offense, and as such, his sentence is illegal.  Defendant cites *Shelton v. Secretary, Dept. of Corrections*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011), among others, as support for his allegations.
>
> Given the Florida Supreme Court's holding in *State v. Adkins*, 37 Fla. L. Weekly S449 (Fla. July 12, 2012), the Court finds that Defendant's allegations lack merit.  The Court further finds that Defendant's sentence is not illegal as a matter of law.  *Judge v. State*, 596 So.2d 73, 77 (Fla. 2d DCA 1991).  Therefore, Defendant's Motion is denied.

(Dkt. 1-3) (court's record citation omitted).[21]

The state appellate court entered a *per curiam* affirmance in which it cited *Mack v. State*, 91

So.3d 868 (Fla. 2d DCA 2012).  *Ortiz v. State*, 114 So.3d 947 (Fla. 2d DCA 2013) (Table).  *Mack*

noted that *Shelton* declared the amended version of § 893.13, Fla. Stat. facially unconstitutional and

that the amendment in § 893.101, Fla. Stat. had the effect of eliminating "guilty knowledge" as an

element of possession.  *Mack*, 91 So.3d at 869.  The amendment was not effective until May 13,

2002, and is not retroactive.  *Id.*  Because Mack committed his offenses in May 2001, the court

concluded, "[t]he version of the statute applicable to Mack's crimes has not been held

unconstitutional."  *Id.*

The offenses in Petitioner's case occurred in October 2001.  (Dkt. 11, Ex. 1, Information.)

In accordance with *Mack*, therefore, his claim is without merit because the removal of "guilty

---

[20]  Section 893.101(2), Fla. Stat. provides: "The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter.  Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter."

[21]  In *Adkins*, the Florida Supreme Court held that § 893.13, Fla. Stat. is constitutional.  Additionally, the *Shelton* decision upon which Petitioner relies was reversed.  *Shelton v. Sec'y, Dep't of Corr.*,  691 F.3d 1348 (11th Cir. 2012).

knowledge" as an element of offenses in Chapter 893 did not occur until after Petitioner committed the offenses.  Moreover, to the extent the state court's determination rests on the interpretation and application of state law, deference must be afforded to the state court's decision.  *See McGuire*, 502 U.S. at 67.  Petitioner does not establish that the state appellate court's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts.  He is not entitled to relief on Ground Eight.

Accordingly, it is

**ORDERED** that Petitioner's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.  The Clerk is directed to enter judgment against Petitioner and to close this case.[22]

It is further **ORDERED** that Petitioner is not entitled to a certificate of appealability.   A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(l).  A district court must first issue a COA.  *Id*.  Petitioner is only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." *Id*.; *Slack* v. *McDaniel,* 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard* v. *Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack,* 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El* v. *Cockrell,* 537 U.S. 322, 335-36 (2003) *(quoting Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).  Petitioner cannot make

---

[22] An evidentiary hearing is not warranted.  *See Landers v. Warden*, *Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore  a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record."); *Henry v. Warden, Ga. Diagnostic Prison*, 750 F.3d 1226, 1232 (11th Cir. 2014) ("Henry is not entitled to an evidentiary hearing on the merits of his claim of juror misconduct because he procedurally defaulted that claim.").

the requisite showing because he cannot demonstrate that reasonable jurists would debate whether the procedural determination that his claims were procedurally defaulted was correct, or whether the petition stated a valid claim of the denial of a constitutional right.  And because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on February 26th, 2016.

JAMES D. WHITTEMORE
United States District Judge

SA:mh
Copy to: *Pro se* Petitioner; Counsel of Record